Good morning everyone. I'm pleased to be joining you here this morning. I've been asked to draw a figure for one of our two cities each year. With that, we will call first case, Haybarger v. Lawrence County Health Probation Control and William Mancino. Mr. Paul. Thank you. Good morning. May it please the court. My name is Greg Paul and I'm here on behalf of Deborah Haybarger. This appeal lies from the grant of a summary judgment. Mr. Paul, did you want to reserve any time for the vote? Yes, Your Honor. Yes, Your Honor. Five minutes, please. Okay. I would like to ask both counties at the beginning, Your Honor, to comment on the question of whether or not this appeal is going to finalize. Yes, sir. This appeal concerning the Family Medical Leave Act, the district court had dismissed on a summary judgment motion. However, there were remaining claims under the Rehabilitation Act that proceeded because the court had denied summary judgment on that count. Therefore, the summary judgment order, which is found at joint appendix page 2, document 125, had entered a judgment order. However, it was not final because there were remaining claims. When the district court had granted the party's stipulation for dismissal of the remaining claims on September 28, 2010, this summary judgment order at document 125, joint appendix 2, became a final appealable order. What about the claim against the other claim? The Rehabilitation Act? Yes. That had been dismissed. But without prejudice. Well, it had actually been... I mean, the order is without prejudice, and that means that it can be reinstated. And I think we need a dismissal with prejudice in order to have, then, this issue an appealable order. Now, are the parties prepared to do this? Well, I think the parties would be prepared to do that, Your Honor. The stipulation that the court had signed off on, I think, was explicit that there was a remaining FMLA claim and the intent was to appeal it. If I understand... I think that the problem you have is Rule 42B. It says that unless the order specifically states it's with prejudice, then it's assumed to be without prejudice. Yes. So the reason why we brought that to your attention with the letter was not only to ask you about it, but perhaps was suggesting that you need to go back. We're hearing arguments this morning on the merits of the appeal, that you may need to go back to the district court to get that resolved. Could you give us a final word? Because there is precedent in this circuit that a dismissal without prejudice is not a final order, and we don't have jurisdiction. So if you want us to consider the merits, please get that order signed. Certainly. Just so it's clear from the appellant's point of view that we would consider that to be a stipulation with prejudice, and we'd certainly take action. I hope the court's advised us of that, too. Okay. I'll move into that. Okay. Thank you. The ultimate, I think, issue that happened here is the district court had granted summary judgment finding that Mr. Mancino, in his individual capacity, did not have the ultimate authority in the employment decision-making, whether that's hiring or firing or anything else. However, the statutory language of the FMLA does not require that high of a burden set forth in 29 U.S.C. 2611, which defines an employer to be anyone who acts in the interest of an employer directly or indirectly. Does subsection 2 modify subsection 3? In other words, subsection 3 says that a public agency is an employer. Subsection 2 talks about the acts of employment, the acts affecting employment. And, you know, there are circuits that say it does not. With respect to the ultimate cause of action against an individual's capacity in the public entity or with respect to the definition of an employer? With respect to supervisors within the public entity and their actions. Right. That, I think that issue, of course, we think that the district court properly found that there can be individual liability, recognizing there was a split of authority in the courts. However, that issue, we didn't appeal, and I don't think there was a cross-appeal in any way filed. But don't we have to decide that? I mean, this court has never decided whether there's individual liability. Don't we have to decide that issue in any way? Otherwise, we're issuing a liability opinion as if there is liability? Well, I think that the district courts that have spoken to it certainly uphold, in our circuit, uphold the possibility of individual liability. I don't think that that issue really was briefed because I don't think it was specifically taken up on appeal. That is correct. There are certain splits in authority, however. I think that is a predicate to it. Yes, Your Honor. I think that the district court was correct in its analysis that there can be individual liability because this statute is specific. So we certainly think that there can be individual liability. Looking at the facts in this case, all of them suggest in our favor, which is Mr. Mancino had signed the termination letter. But you are presupposing we have made the initial decision not to follow the Sixth Circuit. Now, we're not bound by the Sixth Circuit, but we could find it persuasive. Yes, yes. I am assuming that because neither of the parties have brought that as an issue before this court. But certainly the court could address that issue. It does impact our subject matter. It does. It does. Is that an issue that you'd like me to take up now or more of the – No, you didn't cover it in your brief. Neither party covered it. If there's any dispute on it, you may want to submit yourself to that briefing process. But we'll wait to hear from the other side. We want to get to the merits of the argument as to whether or not Mancino was supportive. Okay. Thank you. Number one, Mr. Mancino had signed the termination letter. And that's in the Joint Appendix at 99. So that's certainly a fact that is persuasive. Second, at Joint Appendix 95, which is a memorandum that was prepared by Mr. Mancino to the Director of Human Resources after the termination decision, he writes, as per your request, I have – will briefly outline a summary of the events that led up to my decision to terminate. And this is very insightful because this is Mr. Mancino's decision to terminate. It's not just the formality of signing a termination letter. It was upon his input, his recommendation, and as outlined in this memorandum, it was his decision. The fact that it was upheld by Judge Motto does not defeat our argument that there can be individual liability. The cases that are on point discuss the ability to hire and fire. They discuss whether there was involvement in the decision. Now, we know the facts of this case, that there were three individuals who were involved in the discussion, but it was all based upon Mr. Mancino as the supervisor to make the decision to terminate. His performance evaluations are very insightful. Ms. Haybarger was excellent on all scores with the exception of her attendance due to health issues. Very insightful into the very heart of why the FMLA is necessary, why it provides protections to see doctors, to reasonable absences from employment so that she can get the treatment that she needed during that time. The Supreme Court's decision in Staub only reinforces it, although that was in a USERRA case. So it's not invoking the statutory language that strongly supports our argument under the FMLA. It still upholds the proposition that subordinate decision-makers cannot insulate themselves just by the higher-up who represents the decision. The second, Your Honor, yes, the discriminatory amnesty. That's correct. That's a totally separate issue, but related, and I think as the appellee had asked the court to state the proceedings, that case only reinforces the concept that a subordinate decision-maker can still be held liable. Ultimately, in this case, we are looking at the statutory language of the FMLA, which does permit, we argue, individual liability, certainly under the facts of this case and under legal precedent. Thank you. Mr. Gioia? Thank you, Your Honor. May it please the Court, Edmund Gioia representing Mr. Mancino in this case. Your Honor, this… Do you want to respond to the final order question? Your Honor, I agree with the court. I do think that there should have been, and it was an oversight on my part not to have filed a motion to dismiss the appeal. I do believe that there needs to be a with prejudice order from… Do you agree that the opposing counsel is intended to be dismissed with prejudice? I believe so, Your Honor, but I was not involved in those negotiations. As a matter of fact, I didn't know about those negotiations until I saw the order come from Judge Lancaster. But are you prepared with co-counsel to go get a final order? I will, Your Honor, absolutely. Very good. This case really boils down to one simple thing in relationship to Judge Lancaster's order. We agree that based upon some of the language in the FMLA that Mr. Mancino could theoretically be held individually liable, although we did brief in our brief to Judge Lancaster the concept that he should not be held liable based upon the Sixth Circuit ruling. However, what Judge Lancaster found in this case was fairly simple. Mr. Paul's position is that because Mr. Mancino, acting as he did within the court system, which was as her supervisor, went up the chain of command, did an analysis, did his job as a supervisor, and then went to his supervisors, in other words, as the court knows, Ms. Haybarger and all the employees of the probation department are, in effect, state employees, although paid by the County of Lawrence. And in that, the final decision-maker is the president judge of the court, who is a state employee, a member employed by AOPC. In this particular case, the facts are that Ms. Haybarger was put on probation, that according to Mr. Mancino, she did not improve to the extent that he believed necessary, but there's another piece of this which was included during the course of this litigation and discovery, and that being that there had also been investigations done by two other supervisors in the probation department that had to do with issues involving the management style and skills of Ms. Haybarger, who was the office manager. Now, isn't this summary judgment where we have to find, if we find issues of material fact, summary judgment is inappropriate? And you are presenting the position of the appellee, but if one looks at this from the viewpoint of the appellant, what she has pled, doesn't she say that she was hospitalized for an extensive period of time and then she was fired for taking this extended leave which qualified under the FMLA? What I believe she does, Your Honor, is suggest that she had been hospitalized and had been fired and alleges that it was because she took leave. She never, the facts are that, and the record will show during the course of the discovery, that Ms. Haybarger did not apply for FMLA leave, that Ms. Haybarger was aware, as the office manager who was responsible for passing out all of the documentation in terms of Lawrence County's FMLA policy, never once requested of Mr. Mancino that she needed time. As a matter of fact, historically, because she had been hospitalized or out for diabetes and heart-related issues, she had taken her paid leave, which was vacation time. There was never any, the allegation is that she did that. However, this isn't a situation in which the facts of the case, and from Ms. Haybarger herself, is that she never gave notice to her employer that she wished to take anything other than the type of leave she had taken in the past. So the FMLA... Which would be her regular sick leave, which was exhausting, right? Well, at that point in time, there's no evidence that it had been, Your Honor. There is no evidence that her sick leave was exhausting. And the evidence of record is that she had taken it in the past. She had not even made an inquiry to Mr. Mancino or to the Human Resources Department as to whether or not she was entitled to FMLA or how she would go about even making that determination. So it's your position that the FMLA issue is an afterthought, that she never asked for it beforehand? Absolutely, Your Honor. Because the suit against the court system was based upon the Rehabilitation Act and that she was a stable person needing an accommodation. And the question in that part of the case was whether or not FMLA was deemed to be an accommodation to her medical needs. But our position from Mr. Mancino's part of this is he didn't interfere with her taking it Or don't you want to say nor did she ask if she could take it? Nor did she ask if she could take it. She never gave appropriate notice of something new, I guess is the way that I want to put it. She had gone in the past, had been granted extended leaves. She had taken her time. There was evidence that they had worked with her in the past over this and that she never came to them and changed it. Although that was an answer to a response to Ross' question. The issue of notice of FMLA was never raised in court, but it's not been raised in this court, is it? I believe it has, Your Honor, and I believe it was in my... Was it before this court? Not before this court, Your Honor. Not before this court. And I don't think it was raised by the appellant before this court. I think what was focused here on was the fact... Whether or not Mancino was the employer. Whether or not Mancino was the employer and his alleged animus based upon... or the discriminatory animus based upon her health issues was the reason that she was terminated. Do you know if we really have to look at the total employment... the circumstances of the employment to decide if it's an employer or not? I believe you do, Your Honor, and I think that that's part of this as well is the issue of cases that... Judge Motto had essentially signed it. Judge Motto... Indeed, he did, Your Honor, and the affidavit that was submitted by Judge Motto suggested that he had a meeting with Mr. Mancino. It stated that he had a meeting with the court administrator who would have been Mr. Mancino's supervisor. Mr. Mancino laid out to the judge the issues involving the performance issues that he found for Ms. Haybarger. He also... Judge Motto also indicated that he had personal knowledge of other issues, specifically one that had to do with her failure to comply with billing cycles properly, that at no point in time was there ever any discussion of absenteeism due to health issues. Judge Motto stated in his affidavit that he did not know about those and also stated that had he known about those, that he would have made the same decision to terminate. But wasn't it Mr. Mancino who made the initial decision that she should be terminated? He did. He got everything together and took it to Judge Motto for his signature. Right. And there is no evidence of record in this case that Mr. Mancino made any decision based upon health issues. But he made the decision that she should be terminated. He made a decision that in his view she should be terminated and made that recommendation as he had to do to Judge Motto. Judge Motto's position was that based on his own knowledge of things that were going on in that office, that termination was warranted. Why isn't the fact that Mr. Mancino made the recommendation to pass the statute to Judge Motto and not to pass the trial and question the facts in a way that constitutes an employer? Well, I believe, Your Honor, the fact is that under the FMLA, the true employer, that being the Commonwealth of Pennsylvania through AOPC, is not subject to suit. And that was determined early on, I believe under the 11th Amendment. So what we're suggesting, what the attenuation is, is that a supervisor of an employer, a supervisor within an employer who cannot be subject to FMLA retaliation is now being subject to that, and we raised that issue below under 11th Amendment argument. But you're not disputing that a supervisor of a public agency employer can be held liable? No, I'm not, Your Honor. What I'm suggesting in response to Judge Manaski's question is this. In order to hold Mr. Mancino liable, one has to then presume and prove that he had a discriminatory animus towards Ms. Haybarger based upon a protected class issue. In this case, there has been no evidence produced by... Is there a basis for the district court's ruling that Mr. Mancino did not have the authority to hire an employer and that he needed that in order to have individual liability? It raises the question of whether there's enough evidence of discriminatory animus. Exactly. And he used Judge Mato's affidavit as the basis for that. There are two issues, though, if I might. Both of the cases that have been cited by Appellant and her brief, Gilvitis and McTiernan, are both cases in which motions to dismiss had been filed. They were not summary judgment motions. In McTiernan, there was an alternative motion filed. There was a motion for summary judgment and a motion to dismiss. In both of those cases, the motions to dismiss were denied because the court indicated that further discovery was needed to make a determination as to whether or not the supervisor had been sued, was an employer. In this case, we have a summary judgment motion where there had been discovery, where there was an affidavit that was submitted about terms and conditions and effect of employment, which is what Judge Lancaster ruled upon, which stated that Judge Mato had personal knowledge and made a decision and there was nothing indicated to counteract that. So the idea of whether and part of that was that the Appellant, in her argument to the lower court, suggested a cat's paw theory here, which brings the Staub case into perspective. However, Staub, again, there have been a couple cases that have come after that. One in the Western District, which is the Shinseki case, where someone sued and used the Staub argument, and the court then differentiated by suggesting you needed some evidence to show similar circumstances as in Staub. In this particular case, we raised the issue because we found that Staub was there and asked for our stay, but not because we did not know at that point what the Staub issues were. Here we know it, and there have been cases since then in which the courts have determined that you need to show some more evidence of an animus. In Staub, you had conversations that were being made about these people not liking military folks and wanted to get rid of them. Let me ask you a couple questions. Was it Mr. Mancino's responsibility to monitor Ms. Haybarger's request for family medical leave? It was according to the testimony. Mr. Mancino said that Ms. Haybarger, as the office manager, was the person responsible for taking the request, and those requests then went to the Human Resources Department. So his position was, no, I'm not supposed to monitor what she does, and that if I don't know the answer to the question, she's to go to the Human Resources Department to do that. The evidence is that from Ms. Quimby, who was Human Resources Director, that indeed that was the case, and Ms. Haybarger never went to her to ask for any types of leave. Would you agree that it was Mr. Mancino's responsibility as Director of the Probation Office to monitor Ms. Haybarger's job? Absolutely. What is your position concerning whether subsection 2, the description of an employer, modifies subsection 3 of public agency? Do you agree that a supervisor who determines the terms of employment, who determines whether a termination should be made, even though someone has to formally sign off on it, would fit under the definition of employer in the FMLA? I would, Your Honor, if those were the facts. But I think in this particular case there were differences. In the Haydock case, which was cited, you had a city manager who had the ability to make a hiring and firing decision without any input from anyone else. In this particular case, AOPC and the court system vests that responsibility in the president judge. To say it's a sign-off, I think, is misstating. Isn't that an issue of material fact, exactly? Whether it was a sign-off or not? The exact extent of Mr. Mancino's supervisory powers over Ms. Haber-Barger. Well, I don't think that there is an issue of material fact. There was never anything raised in the lower court as to whether or not Mr. Mancino had what his authority was. What was raised was what did he do and what was his role as a supervisor. But it always came back down in terms of factual issues to the fact that it was not Mr. Mancino who had the authority to do anything other than recommend, if he so chose, disciplinary action to the president judge. And it was the president judge who made the judgment, not a sign-off. That affidavit, which is what Judge Lancaster suggested, was that he knew personally other things that were going on there that were involving Ms. Haber-Barger. And he felt that termination was warranted based upon the totality of the circumstances that he had with Mr. Mancino. Thank you. Thank you. I'm not sure how much you want me to get into some of the facts that were mentioned here, but briefly I'll just respond. The issue of notice under the FMLA is clearly a factual dispute. I can see it in the jury instruction right now. I mean, the facts are that Ms. Haber-Barger and her husband, after she was hospitalized, had talked to Mr. Ochebon and advised them of the need for leave. What we're really getting into here is, at that time, the county's policy, which is in violation of the FMLA, as we argued below, to use all of your sick leave first and then use FMLA. The statute speaks directly to that, and that's illegal, really. And Judge Lancaster had mentioned that just very briefly in a footnote, saying that he didn't have to, in the summary judgment order, he didn't have to get to that because he had found that Mr. Mancino didn't have the hire and fire authority. But these are all issues that are hotly disputed below. Similarly, with respect to who's responsible for administering the FMLA, as Mr. Joyal had mentioned, the HR Director, Ms. Quinby, had said that it was Mr. Mancino's responsibility. Mr. Mancino said it was Ms. Haber-Barger's responsibility. There was an awful lot of pointing the fingers. And, again, I think that because of that policy that they had in place at that time to use the sick leave first, just unlike other employers, they often didn't get to the FMLA. But that doesn't mean that an employee such as Ms. Haber-Barger should not enjoy the protections of the FMLA. But did she ever – I realize that that issue is not before us, but it may come before the court at some later time. Did she ever request FMLA leave? Under the jury instructions and under the law, the no use of the magic words, yes. In other words, she never submitted a form entitled family medical leave. She never used the magical words family medical leave act, but she certainly advised of her need for medical leave of absence, particularly when she was hospitalized, when she knew that she was going to be out for several weeks. So absolutely yes to that question without using the magic language. And that's perfectly permissible under the statute. The issue of Judge Motto, I think, is also clear if we look at his affidavit, particularly at 110, Joint Appendix 110. It's very clear.  I think it's very clear today, based upon the record, that all of this generated from Mr. Mancino, dating back to the very original performance evaluations. And they are particularly insightful because Mr. Mancino had written that she met or exceeded all performance evaluations in 03, except for attendance, and specifically says due to her – she needs to improve her health issues. I mean, this is particularly insightful into his state of mind in his decision-making process that led to the probationary period, that led to his decision, really, to terminate. And I only go back to that memo in 05 where he writes to Ms. Quimby, my decision to terminate. Unless there's other questions, I think we've covered the points. Thank you. We thank both counsel. We ask you that you proceed expeditiously and clear up this jurisdictional question before we issue a court. We'll hold this matter in advance and direct if you want the jurisdictional question to be resolved in order for you to provide us a copy of that. And that's going to be taken care of. Thank you.